# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Case No. CR-25-189-JFH |
| ANTHONY WAYNE SCHOGGINS, ) | |
| Defendant. ) | |

### FINDINGS AND RECOMMENDATION

This matter comes before this Court on Defendant's Motion to Suppress (Docket Entry No. 96). This Motion was referred to the undersigned for the entry of Findings and a Recommendation by United States District Judge John Heil, III, the presiding judge over this case. On November 24, 2025, this Court conducted a hearing and received evidence in support and opposition to the Motion. The hearing was attended by Jordan Howanitz for the Government and Warren Gotcher on behalf of Defendant Schoggins.

### Statement of Facts

Defendant offered the testimony of Special Agent Casey Eskridge with the Drug Enforcement Administration, working with the Oklahoma Bureau of Narcotics task force. Special Agent Eskridge was the case agent assigned to this case. Special Agent Eskridge issued two administrative subpoenas[1] to the Oklahoma Turnpike Authority covering a four-month period from February

---

1 Administrative subpoenas do not require a showing of probable cause to justify their issuance.

through May of 2025 for the automatic license plate reader information on Defendant's vehicle. The subpoenas sought location information on Defendant's vehicle over the turnpike system in Oklahoma. Specifically, the subpoena sought when and when Defendant's license plate passed through the turnpike license plate reader over the designated four-month period. Special Agent Eskridge testified that the information was used to corroborate Defendant's known location. He also verified that the information obtained from the Oklahoma Turnpike Authority showed Defendant passing through the reader system on multiple occasions. The Oklahoma Turnpike Authority provided the date, time, location, and video of Defendant's vehicle passing through the reader. The video, however, did not depict the interior of Defendant's vehicle. The information obtained through the automatic license plate reader did not surpass that which was available from observing the public roadway.

  Special Agent Eskridge also testified that he sought and obtained "ping" search warrants from this Court, seeking to obtain Defendant's location information from Defendant's cell phone service provider.[2] Special Agent Eskridge explained that the information provided by the service provider may either ascertain the location of the customer's cell phone by the customer using the cell phone or by the service provider sending a signal to the customer's

---

2 *See* Application for Search Warrant, Case No. MJ-25-132-DES, Doc. Ent. No. 1 and Application for Search Warrant, Case No. MJ-25-169-GLJ, Doc. Ent. No. 1.

phone. In this case, Special Agent Eskridge testified that Defendant's location was determined from his use of his cell phone and that he never requested that the service provider "ping" Defendant' cell phone in order to find his location. Special Agent Eskridge utilized software on his agency computer and cell phone to receive the signal when Defendant used his cell phone to determine his location.

Special Agent Eskridge testified that once Defendant was located, he was placed under physical surveillance, beginning around June 1, 2025, when Defendant was located at a hotel in Tulsa, Oklahoma. Information from the automatic license plate reader was then used to corroborate location information from human sources. The information received from the Oklahoma Turnpike Authority was obtained after-the-fact and was not used to determine Defendant's location in real time.

On June 1, 2025 at approximately 2:30 a.m., Deputy Danielle Hamilton with the Rogers County, Oklahoma Sheriff's Office and assigned to the Oklahoma Bureau of Narcotics ("OBN") testified that she was on traffic and interdiction duty in Okmulgee County when she observed a light blue Ford Focus operated by Defendant make two unsafe lane changes. Namely, Deputy Hamilton testified that she observed Defendant turn off his turn signal prior to completing a lane change, "abruptly" moving from the inside lane to the outside lane then moving from the outside lane to the inside lane when a vehicle with hazard lights appeared on the side of the road without providing adequate signaling. Her

dash camera did not record the alleged traffic violations because her patrol unit vehicle was facing perpendicular to the roadway on which Defendant was traveling.³ Deputy Hamilton stated that no other vehicles were on the roadway at the time of the lane changes. Deputy Hamilton testified that she had been previously contacted by law enforcement to look out for Defendant's vehicle. She maintained, however, that the traffic stop of Defendant's vehicle was precipitated by the improper lane changes and that she would not have pulled Defendant's vehicle over if not for the traffic violation. Deputy Hamilton activated her overhead emergency lights and pulled Defendant's vehicle to the side of Highway 75 northbound near Airport Road in Okmulgee County, Oklahoma. Officers with the Oklahoma Highway Patrol were almost immediately present on scene.

Deputy Hamilton approached the vehicle driven by Defendant and also occupied by passenger Gabrielle Brown sitting behind the driver. Deputy Hamilton testified that she immediately noted "a strong odor of green marijuana" emanating from Defendant's vehicle. Deputy Hamilton advised Defendant that she would be issuing him a warning for the improper lane change and asked him to sit in the passenger seat of her patrol unit while she prepared the warning.

While Deputy Hamilton performed a records check in her patrol unit, she

---

3 The dash camera video was played at the hearing and introduced into evidence. *See Gov. Exh. No. 1.*

observed Defendant and engaged in conversation with him. She stated that she noted Defendant was "jittery", acted nervous, and would not make eye contact with her. Deputy Hamilton observed "extreme signs of nervousness and common signs of recent narcotic use not related to marijuana."[4] Deputy Hamilton asked Defendant about the smell of marijuana coming from his vehicle. Defendant told Deputy Hamilton that he had a medical marijuana card but that they had not smoked marijuana in over 24 hours. Defendant explained that he and Ms. Brown were going through Okmulgee to see a friend who had just been released from rehab.

Deputy Hamilton, who was also a trained K-9 officer with a dog in her vehicle, determined to run her canine, Thor, around Defendant's vehicle based upon the "totality of the circumstances." She stated that she "thought more was going on." Deputy Hamilton informed Defendant of her intent to run the dog around the vehicle to do a "free air-sniff." Deputy Hamilton ran Thor around Defendant's vehicle approximately four minutes into the traffic stop. Thor gave a positive alert for narcotics on Defendant's vehicle which precipitated a search. A black sunglass case was found on the center console of Defendant's vehicle which contained methamphetamine, fentanyl, and fentanyl pills. Defendant and Ms. Brown were placed under arrest.

On September 10, 2025, the grand jury sitting in this District returned a

---

4 *See* Probable Cause Affidavit on Non-Warrant Arrest.

multi-count, multi-defendant Indictment. Defendant Schoggins was charged with Drug Conspiracy in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B); Possession With Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2; and Possession With Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2.

## Basis for the Stop

Defendant first challenges that he violated traffic ordinances to justify the traffic stop by Deputy Hamilton. The Fourth Amendment to the Constitution protects citizens from unreasonable searches and seizures conducted by government officials, including law enforcement. Traffic stops implicate the Fourth Amendment. However, "[a] seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S.Ct. 1609, 1614 (2015). "A traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic . . . regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir.), *cert. denied*, 557 U.S. 943, 129 S.Ct. 2881 (2009). The Court "looks only at whether the stop was 'objectively justified'; the officer's subjective motives are irrelevant." *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008).

The statute in question which Defendant allegedly violated provides, in pertinent part as applicable to this case, as follows:

> A vehicle shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety and then given a signal, not less than the last one hundred (100) feet traveled by the vehicle, of his or her intention to change lanes.

Okla. Stat. Ann. tit. 47, § 11-309.

Defendant contends that no other cars were present on the road at the time of the lane changes and, therefore, the changes were not unsafe as defined by the statute. Further, Defendant asked the Court to take judicial notice that cars moving 60 miles per hour travels approximately 88 feet per second and, therefore, Defendant has signaled within 100 feet. The Court did not specifically take judicial notice of the fact requested.

Deputy Hamilton testified that Defendant made an unsafe lane change by turning his turn signal off before the lane change was completed. This Court has no basis to find Deputy Hamilton's testimony untrustworthy. Based upon this testimony and Deputy Hamilton's Probable Cause Affidavit and the prevailing authority in the Tenth Circuit, the initial stop of Defendant's vehicle was appropriate.[5]

---

5 The Tenth Circuit's standard in evaluating traffic stops leaves considerable discretion in the observing officer. The Court has stated

> we now adopt a new standard in this circuit for examining the constitutionality of a traffic stop: a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.[4] It is irrelevant, for purposes of Fourth Amendment review, "whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop." *United States v. Ferguson,* 8 F.3d 385, 391

## Exceeding the Purpose for the Stop

Defendant also contends Deputy Hamilton exceeded the scope of the stop and extended the duration of the stop longer than was necessary to investigate the traffic violation and write Defendant a warning. In the circumstance of a routine traffic stop, an officer is permitted to request the driver's license and vehicle registration, conduct a computer check, and issue a citation. *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir.), *cert. denied*, 511 U.S. 1095, 114 S.Ct. 1860 (1994). However, the detention can "last no longer than is necessary to effectuate the purpose of the stop," and "[t]he scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325 (1983). Based upon her stated observations, Deputy Hamilton did not improperly detain Defendants. She ran the canine around Defendant's vehicle within four minutes of the stop based upon those observations. This delay was not of an unreasonable duration. The fact she had not yet begun writing the warning at the time the dog was

---

(6th Cir.1993), *cert. denied,* 513 U.S. 828, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994). It is also irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated "any one of the multitude of applicable traffic and equipment regulations" of the jurisdiction. *Delaware v. Prouse,* 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979).

*United States v. Botero-Ospina,* 71 F.3d 783, 787 (10th Cir. 1995).

employed does not render either the scope or the duration of the stop constitutionally inappropriate. So long as her suspicion was reasonable under the circumstances, Deputy Hamilton did not violate the Fourth Amendment. *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998)(citations omitted). Deputy Hamilton observed conditions which would give rise to a reasonable and articulable suspicion of illegal activity. The smell of green marijuana and extreme nervousness associated with drug use justified the continued detention of Defendant.

### Use of the Automatic License Plate Reader Information

Defendant challenges the use of information derived from the administrative warrants served upon the Oklahoma Turnpike Authority for Defendant's location information utilizing the automatic license plate reader system. He does not cite to any authority which supports this position. Moreover, Defendant's premise is based upon a mistake in fact. Defendant contends in the briefing that "[u]nbenownst to the Defendant he had been tracked by ALPR technology for the last four (4) months."[6] The evidence indicates that law enforcement did not use the reader information to track Defendant in real time but rather sought the reader information in historical terms to corroborate Defendant's location for February through May of 2025. Indeed, the reader information was not obtained until two days after Defendant

---

6 *See* Defendant's Motion to Suppress, Doc. Ent. No. 96.

was arrested. While Defendant cites to the expectation of privacy for cell phone data, he does not cite to authority that the reader information is entitled to the same level of protection. This Court does not perceive that the same expectation is afforded the reader information which provides historical location data on a public highway. This Court finds no Fourth Amendment violation in the obtaining of this information.

## Use of Cell Phone Data

Defendant asserts that the cell phone data search warrant obtained from United States Magistrate Judges in this Court were improperly obtained. Defendant is correct that there is a reasonable expectation of privacy associated with an individual's physical location. *Carpenter v. United States*, 585 U.S. 296, 310 (2018). Accordingly, a search warrant must be obtained in order to secure cell phone location data. *Id.* at 316-17.

In this instance, law enforcement did obtain search warrants for Defendant's cell phone location data from his service provider, AT&T. Again, law enforcement did not request that the provider "ping" Defendant's cell phone to ascertain his location. Rather, only Defendant's use of the device triggered the ability to obtain his location. Thus, Defendant's concern that the provider was in concert with law enforcement by initiating a signal as directed by law enforcement is ill-founded.

A review of the applications for search warrant revealed law enforcement relied upon a confidential informant who provided a cell phone to officers to

review with text messages from Defendant showing drugs and drug paraphernalia and weapons. They also relate information from an interview with a Cooperating Defendant-1 who implicated Defendant in drug sales. The Cooperating Defendant-1's cell phone also included text messages which incriminated Defendant in drug sales. The affidavit also identifies a second Cooperating Defendant-2 who confirmed the drug transactions between Defendant and Cooperating Defendant-2. A Cooperating Defendant-3 provided Defendant's cell phone number and further corroborated the drug and weapons transactions involving Defendant.

Generally, corroboration of information provided by an informant is needed to establish the informant's veracity or reliability. *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the information.") (citation omitted). In this case, the information provided by the Confidential Informant and Cooperating Defendants was corroborated. Law enforcement had multiple sources for the incriminating information on Defendant's drug sales activities.

This does not, however, end the inquiry into the deficiencies and limitations of the Affidavit for Search Warrant and resultant Search Warrant. Probable cause is required to support a search warrant. *United States v. Biglow*, 562 F.3d 1272, 1280-81 (10th Cir. 2009). Probable cause to issue a search warrant exists if the supporting affidavit provides facts sufficient to "lead a

prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009) (citing *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998)). This requires more than a "mere suspicion" but does not require evidence sufficient to convict. *Danhauer*, 229 F.3d at 1005. "A magistrate judge's task in determining whether probable cause exists to support a search warrant 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A magistrate judge's decision to issue a warrant is entitled to "great deference." *Id.* (citations omitted). As a result, the subsequent inquiry for suppression purposes is whether, "under the totality of the circumstances presented in the affidavit, the magistrate judge had a 'substantial basis' for determining that probable cause existed." *Id.* (citations omitted).

The Affidavit for Search Warrant provides probable cause to obtain the cell phone location data. Law enforcement relied upon multiple sources for information as to Defendant's drug sales. Because of these transactions, it was reasonable to conclude that contraband would be found on Defendant once he was located or simply that his arrest would be effectuated once he was located

based upon the information obtained from the Confidential Informant and the three Cooperating Defendants. Defendant's characterization of the warrants as anticipatory is not borne out by the statements in the affidavits.

IT IS THEREFORE THE RECOMMENDATION OF THIS COURT Defendant's Motion to Suppress (Docket Entry No. 96) be **DENIED**.

The parties are given fourteen (14) days from the date of the service of these Findings and Recommendation to file any objections to them. The failure to object to the Findings and Recommendation within the fourteen-day period will preclude appellate review of the judgment of the District Court based on such findings.

IT IS SO ORDERED this 28th day of January, 2026.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE