IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                              Case No. 25-CR-189-JFH-1

ANTHONY WAYNE SCHOGGINS,

        Defendant.

## OPINION AND ORDER

Before the Court is Defendant Anthony Wayne Schoggins's Objections [Dkt. No. 136] to Magistrate Judge Robertson's Findings and Recommendation [Dkt. No. 129], which recommends denying Defendant's Motion to Suppress [Dkt. Nos. 96, 97]. For the reasons set forth below, Defendant's Objections are OVERRULED, Magistrate Judge Roberton's Findings and Recommendation is ADOPTED, and Defendant's Motion to Suppress is DENIED.

## BACKGROUND

In January 2025, Drug Enforcement Administration ("DEA") agents identified Defendant Schoggins as a fentanyl distributor in the area around McAlester, Oklahoma. After securing a warrant to track his cell phone, DEA and the Oklahoma Bureau of Narcotics ("OBN") agents tracked Defendant's location to a hotel in Tulsa, Oklahoma, on May 31, 2025. After arriving to the hotel, the agents physically surveyed Defendant late into the night, where they saw Defendant and another female leave the hotel around 1:30 a.m. The agents then followed the pair while they traveled south toward Okmulgee, Oklahoma.

Meanwhile, Deputy Hamilton, a sheriff's deputy assigned to the OBN, received instructions to observe Defendant while she conducted traffic and interdiction duty on Highway

75 in Okmulgee County.  At approximately 2:30 a.m., Deputy Hamilton observed Defendant make two unsafe lane changes.  Specifically, she saw Defendant turn his signal on and off while crossing the dividing line between the two lanes, abruptly move from the inside lane to the outside lane, and then abruptly move again from the inside lane to the outside lane while providing very short signaling.  Deputy Hamilton then pulled Defendant over for his abrupt lane changes and signaling.

Upon approaching Defendant's vehicle, Deputy Hamilton smelled a strong odor consistent with marijuana coming from inside the car.  Defendant also displayed signs of nervousness, long pauses in answering questions, rapid breathing, dilated pupils, bloodshot eyes, and other signs of narcotic use.  Based on the totality of the circumstances, Deputy Hamilton ran her K-9.  The K-9 gave a positive alert, the car was searched, methamphetamine, fentanyl, and fentanyl pills were found, and Defendant and his passenger were arrested.  Furthermore, after executing a federal search warrant several days later, law enforcement found additional bags in Defendant's vehicle containing fentanyl, pure methamphetamine, and methamphetamine hydrochloride.

Ultimately, the United States of America charged Defendant, along with several others, with drug conspiracy, possession with intent to distribute fentanyl, and possession with intent to distribute methamphetamine, all in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846.  Dkt. No. 2.  Defendant subsequently moved to suppress several items of evidence, including the drugs from his car, based on the Fourth Amendment.  Dkt. No. 96-97.  Judge Robertson then conducted an evidentiary hearing and recommended that the Court deny his Motion to Suppress.  Dkt. No. 129.  Defendant timely objected to Judge Robertson's recommendation, but he only objects to one finding—that Deputy Hamilton's traffic stop was justified at its inception.  The Court overrules Defendant's objection as set forth below.

2

**STANDARD OF REVIEW**

A district judge may refer a defendant's motion to suppress evidence to a magistrate judge for recommendation for disposing of the motion. Fed. R. Crim. P. 59(b)(1). After the magistrate judge conducts a hearing and enters his or her recommendation, either party may file specific, written objections to the magistrate judge's recommendation within fourteen days. Fed. R. Crim. P. 59(b)(2). Failure to object waives a party's right to review. *Id.* If a party does file specific, written objections within fourteen days, then the district judge must consider the objections de novo. Fed. R. Crim. P. 59(b)(3). Because Defendant timely objected to Magistrate Judge Robertson's Findings and Recommendation, the Court reviews those objections de novo.

**AUTHORITY AND ANALYSIS**

Defendant's only objection is that Judge Robertson erroneously found the basis of his traffic stop lawful. Dkt. No. 136 at 2. According to Defendant, "the evidence at the hearing show[ed] that the defendant was not violating any traffic regulation at the time of the stop," and thus, the stop was illegal. *Id.* Because the stop was illegal, he argues, "anything found in the search of the vehicle violated the Fourth Amendment, and should be suppressed." *Id.* at 5. The Court disagrees.

**A. Legal Framework for Constitutional Traffic Stops**

To begin, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop, such as the one at issue here, is a "seizure" within the meaning of the Fourth Amendment. *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1226 (10th Cir. 2008). When analyzing the constitutionality of a traffic stop, courts apply the "reasonable suspicion"

3

standard set forth in *Terry v. Ohio*. *See United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

Under this standard, courts must examine whether the officer's stop of the defendant's vehicle was "justified at its inception." *Id*. "A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *Id.* at 1134. "For reasonable suspicion to exist, an officer need not rule out the possibility of innocent conduct; he or she simply must possess some minimal level of objective justification for making the stop." *Id.* (quotations and citations omitted). In evaluating objective justification, courts ask "whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate." *Id.* (quotations and citations omitted). Finally, an officer's subjective motivations in effecting a stop are irrelevant to the *Terry* analysis. *Id.*

## B. Deputy Hamilton's Justification for the Traffic Stop

Here, Deputy Hamilton stopped Defendant for abruptly changing lanes and failing to adequately signal his lane changes. Although she did not provide a specific statutory citation for this violation, Judge Robertson, the Government, and Defendant all agree that her stop was based on a violation of 47 Okla. Stat. § 11-309. This statute provides that:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic. . . 1. A vehicle shall be driven as nearly as practicable entirely within a single lane; 2. A vehicle shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety and then given a signal, not less than the last one hundred (100) feet traveled by the vehicle, of his or her intention to change lanes.

47 Okla. Stat. § 11-309. At the evidentiary hearing, Deputy Hamilton testified that Defendant failed to keep his signal on for at least one hundred feet:

Q:    Okay. And I guess, if you can be as detailed as possible, what exactly was the violation that you witnessed on that evening?

A:    So, you need a signal within 100 feet before you make a lane change. He made an abrupt, as in all of a sudden—he made the lane change instantly without signaling.

Q:    Okay. So, his signal would not have been on for the required 100 feet.

A:    That is correct.

Dkt. No. 135 at 12: 12-20. She also clarified when he turned his signal on and off:

Q:    When the defendant changed lanes, he did have his signal on, didn't he?
…

A:    So, when he first made the lane change, he turned his signal on, but he did not signal within 100 feet, and he turned it off before he was completely in the lane, and then he did the same thing again.
…

Q:    Anyway, on the second stop, what happened? I mean the second lane change. What happened?

A:    It was the same thing. It was just abrupt. He did not signal within 100 feet. He just make a quick lane change . . . . So, like, when you're in the middle of both lanes is when he signaled, which would not be 100 feet within the correct lane. So, if he's in the number one lane, and he's going to the number two, so he's in the number one, and they've got the divider, he's signaling while he's in the middle of both lanes.

*Id.* at 16: 13-21; 26: 1-11. Based on this testimony and her Probable Cause Affidavit reflecting the same, Judge Robertson found that the initial stop was lawful. Dkt. No. 129 at 7.[1]

**C.  Defendant's Objections are Overruled.**

Defendant argues that Judge Robertson's conclusion was erroneous for several reasons.

First, Defendant argues that Judge Robertson failed to take judicial notice that a vehicle traveling

---

[1] The Court has reviewed the evidentiary hearing's transcript and all of the documents presented at the hearing, including Deputy Hamilton's Probable Cause Affidavit and several recordings from Deputy Hamilton's vehicle. However, these recordings do not show Defendant making his lane changes because her vehicle was positioned perpendicular to the roadway.

sixty miles an hour travels eighty-eight feet per second. Dkt. No. 136 at 4. Defendant seeks judicial notice of this fact to show that if he was traveling at sixty miles per hour or faster, he could have traveled one hundred feet under two seconds. *Id.* So, he presumably argues, if his signal was on for just under two seconds while traveling sixty miles per hour, he would not have violated § 11-309's signal requirements, and Deputy Hamilton should not have stopped him.

However, "[a]n officer's objectively reasonable mistake of fact may support the reasonable suspicion or probable cause necessary to justify a traffic stop." *Winder*, 557 F.3d at 1134. Indeed, "the constitutionality of the stop does not depend on whether the driver did, in fact, commit a traffic violation. The standard is reasonable suspicion of wrongdoing. If an officer reasonably thinks he saw a driver commit a traffic infraction, then that is enough to pull him over." *United States v. Ramdial*, 717 F. Supp. 3d 1118, 1126 (W.D. Okla. 2024), *aff'd*, No. 24-6213, 2025 WL 2682624 (10th Cir. Sept. 19, 2025).

Here, any potential mistake of fact made by Deputy Hamilton "was made in good faith and is objectively reasonable under the circumstances." *Winder*, 557 F.3d at 1134. Indeed, Deputy Hamilton testified that she saw Defendant (1) abruptly change lanes "within a second or two," (2) turn his signal on while crossing the dividing line between the two lanes, and (3) turn his signal off before fully merging into the other lane. Dkt. No. 135 at 16: 13-21; 20: 16; 26: 1-11. She also observed Defendant's driving behavior at approximately 2:30 a.m. while it was raining. Given Defendant's abrupt lane changes, his short signaling, and the potentially low visibility, it was reasonable for Deputy Hamilton to believe that Defendant failed to signal for at least one hundred feet in violation of § 11-309, even if her distance estimations were slightly off. So, whether the Court takes judicial notice of a vehicle's hypothetical speed and distance traveled is ultimately irrelevant; with or without judicial notice, Deputy Hamilton had probable cause to stop Defendant.

Second, Defendant asserts that § 11-309 did not require the turn signal to be on as Defendant merged into the other lane. Instead, he argues, § 11-309 only required him to turn his signal for at least one hundred feet before changing lanes and that he safely change lanes. Dkt. No. 136 at 4. But as stated above, Deputy Hamilton saw Defendant abruptly change lanes and turn his signal on and off within what she reasonably believed was less than one hundred feet. *See* Dkt. No. 135 at 12: 12-20; 16: 13-21. So, Deputy Hamilton saw him fail to comply with § 11-309's signal requirements even as Defendant interprets that statute. For these reasons, the Court finds that Deputy Hamilton's traffic stop was lawful.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Objections [Dkt. No. 136] are OVERRULED, Magistrate Judge Roberton's Findings and Recommendation [Dkt. No. 129] is ADOPTED, and Defendant's Motion to Suppress [Dkt. No. 96] is DENIED.

It is so ordered this 10th day of February, 2026.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE